Lennen *et al. v.* Craig *et al.*

Filed April 25, 1884.

---

No. 10,259.

## LENNEN ET AL. *v.* CRAIG ET AL.

WILL.—*Construction of.*—*Devise to One and "Her Children After Her."*—*Life-Estate.*—A testator, after devising a portion of his estate to his children "as tenants in common," but that the share of one daughter should be less than the shares of the other children, provided that her share "shall descend to her and her children after her, free from and beyond any control of her husband, * * and unincumbered from any of the debts and liabilities of his, forever."
*Held*, that she took in fee-simple, and not a mere life-estate.

From the Hamilton Circuit Court.

*M. L. Robinson, J. W. Lovett, T. J. Kane, T. P. Davis, A. F. Shirts, G. Shirts* and *W. R. Fertig,* for appellants.

*D. Moss, R. R. Stephenson* and *J. Stafford,* for appellees.

HAMMOND, J.—Action by the appellees against the appellants for the partition of real estate. The controversy in the case grows out of the construction of the fifth clause of the will of Peter Lennen, who died in 1862, seized in fee simple of the real estate which is the subject of the present litigation.

In the second clause of his will, the testator gave certain real estate to his widow, to be held by her " during her widowhood, but not in fee simple." The third and fourth clauses relate to bequests of personal property. The fifth clause is as follows:

" *Fifthly.* I give and bequeath all the rest, residue and remainder of my estate, real and personal, to Ann Bratton, Thomas Lennen, Peter B. Lennen, Barbara Ann Keffer, Louisa Ellis and William C. Lennen, as tenants in common, to share alike, except that the share or portion belonging to my daughter Louisa Ellis, wife of James Ellis, be $150 less than the others, she having been paid and advanced that amount already ; and it is further provided and excepted that the share or portion of said Louisa Ellis shall descend to her and her children after her free from and beyond any control of her husband, the said James Ellis, and unincumbered from any of the debts and liabilities of his forever. I also direct that at the death or marriage of my wife, Amelia, the real estate set apart for her support, in item No. 2, shall immediately descend and belong in fee simple, as tenants in common, to all my children as in this item No. 5 provided."

The devisees named in the fifth clause of the will were the testator's children. The appellees claim to own the undivided one-sixth of the land in controversy. Their claim is well founded, provided said Louisa Ellis took a life-estate only under the will and the remainder went to her children. Said Louisa Ellis and her husband, before her death, which occurred in 1876, made a conveyance of her interest in the real estate, and through that conveyance the appellants claim to own the interest contended for by the appellees. The question presented is whether the will gave Louisa a fee simple or a life-estate. The court below found the facts specially, and, on the theory that she took only a life-estate, gave its conclusions of law and rendered judgment in favor of the appellees.

If there were words in the will expressly giving the es-

tate to Louisa during her life and at her death to her chil-
dren, there is no question but she would have taken but a
life-estate and her children the remainder in fee, the word
" children " being usually a word of purchase and not of
limitation. 3 Jarman Wills, 106 n., 117 n., 174 and 182.
But there are no words expressly limiting her interest to
a life-estate. The real estate allotted to her was, in the lan-
guage of the will, to " descend to her and her children after
her." While the language is inexact, the meaning, we think,
is that Louisa should take under the will from the testator,
and her children, after her death, should hold by descent
from her. We do not think it was intended that the chil-
dren should take under the will, but should hold as heirs of
their mother. Had the testator intended that Louisa should
have but a life-estate, words commonly employed in such cases
would no doubt have been used, as " to her during life, and
at her death to her children." The manifest purpose of the
testator was that his daughter should hold the land free of
the debts of her husband, and that he should have no part in its
inheritance at her death. He could not, of course, control
the descent if she took the fee simple. An estate which at
common law was adjudged a fee tail is under our statute to
be held a fee simple. Section 2958, R. S. 1881. The latter
part of the fifth clause of the will, which provides that at the
death or marriage of the testator's widow, the real estate,
set apart to her in the second clause, shall descend and be-
long to all his children *in fee simple,* as provided in said fifth
clause, manifests clearly, we think, his intention. A fee sim-
ple estate is well understood in the language of every day
life as well as in the literature of the law as being the high-
est estate one can hold in land. And as the children, after
the widow's death or marriage, were to take in fee simple the
interest set apart to her, so, it seems to have been the tes-
tator's intention that they were also to take the same estate
in the land immediately devised to them. The care taken by
the testator to qualify the interest devised to his wife in the

second clause of the will is in marked contrast with the looseness of expression in the fifth clause, if the supposition prevails that he intended to give his daughter a life-estate only. Taking the will as a whole, we conclude that the testator intended to give his daughter Louisa, as well as his other children, a fee simple estate, but placed some supposed restrictions on her interest, designed to protect her and her children from the improvidence of her husband.

We think that the court below erred in its construction of the will.

Judgment reversed, at appellee's costs, with instructions to the court below to restate its conclusions of law upon the theory that Louisa Ellis took a fee simple interest under the will, and to determine the rights of the parties accordingly.

Filed April 25, 1884.