

IN THE

# Court of Appeals of Indiana

Mary Gerth,

*Appellant-Respondent*

v.

Estate of William Bloemer,

*Appellee-Petitioner*



FILED

Jul 16 2024, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

July 16, 2024

Court of Appeals Case No.
24A-ES-117

Appeal from the Jennings Circuit Court

The Honorable Murielle S. Bright, Judge

Trial Court Cause No.
40C01-2302-ES-1

**Opinion by Judge Crone**
Judges Bradford and Tavitas concur.

**Crone, Judge.**

## Case Summary

[1] William Bloemer died testate and was survived by his mother Agnes and eight siblings. William's brother Ronald became the administrator of his estate (the Estate) and filed a petition to construe a provision of the will regarding the disposition of certain assets. After a hearing, the trial court issued an order directing that certain assets be distributed as specific bequests to Agnes. One of William's sisters, Mary Gerth, now appeals that order, arguing that the assets are part of the residuary estate and should be distributed to her and her siblings and Agnes under the laws of intestate succession. The Estate argues that this Court lacks jurisdiction over Mary's appeal and, alternatively, that the trial court correctly interpreted the will. We disagree with both of the Estate's arguments and therefore reverse and remand.

## Facts and Procedural History

[2] William, a farmer, died in January 2023. Ronald filed a petition to probate William's handwritten will and was appointed the administrator of the supervised Estate. In September 2023, Ronald filed a petition to construe the will, in which he noted that the document had no residuary clause; that William had "no surviving spouse or descendants[,]" and thus "his residuary estate would pass under the laws of intestate succession to his mother and

surviving siblings"; and that "[q]uestions [had] arisen as to what assets should be included in [William's] residuary estate." Appellant's App. Vol. 2 at 93.

[3] In December 2023, after a hearing, the trial court issued an order that reads in pertinent part as follows:

> 6. The issue at hand, and subject of this "Petition to Construe" is whether the … assets not specifically devised and bequeathed in William's Last Will and Testament should be included in a specific bequest provision or be classified as residue of William's estate.
>
> 7. Specifically at question is the bequest from William's Last Will and Testament, "my cash in Banks & my Stocks go to Agnes Bloemer."
>
> ….
>
> 10. [I]n this case it seems the legal arguments and question of applicable law has complicated somewhat straightforward "common sense" issues, specifically:
>
> > a. "My cash in banks" indicates William's intent that his cash in the bank go to his mother, Agnes Bloemer. William had accumulated a substantial amount of cash and coins in his own home and also some found to be with his mother, Agnes. For whatever reason, William had not deposited this cash and coins into the bank. Given the substantial amount of cash and coins, it seems that William had a clear intent to **not** deposit his cash and coins into the bank. Therefore, that cash and coins **cannot** be included in "my cash in banks." Therefore, the cash and coins in the amount of $13,124.93 shall be considered part of the residuary estate and distributed 25% to Agnes Bloemer and 75% equally among the eight (8) surviving

siblings pursuant to Indiana Code 29-1-2-1.

b. Conversely, the uncashed grain checks in the amount of $56,284.63, refunds payable to the Estate for amounts William deposited with suppliers for the upcoming farming season in anticipation of ordering supplies in the amount of $27,628.17, and prepaid rent which William had paid to Eugene Kreutzjans and Fish Creek Farms, Inc. which was refunded when the Estate abandoned those farm leases (with the Court's permission) in the amount of $35,400.00, have no monetary value if not deposited into the bank. Therefore, the uncashed grain checks, refunds from suppliers, and prepaid rent **must be** considered "my cash in Banks," and distributed to William's mother, Agnes Bloemer, as specifically bequeathed by William in his Last Will and Testament.

Appealed Order at 1-3. Mary now appeals from paragraph 10b of the trial court's order.

## Discussion and Decision

## Section 1 – This Court has jurisdiction over this appeal as an interlocutory appeal as of right from an order for the payment of money under Indiana Appellate Rule 14(A)(1).

[4] The Estate argues that this Court lacks jurisdiction over Mary's appeal. "It is the duty of this Court to determine whether we have jurisdiction before proceeding to determine the rights of the parties on the merits." *Allstate Ins. Co. v. Scroghan*, 801 N.E.2d 191, 193 (Ind. Ct. App. 2004), *trans. denied*. Jurisdiction

is a question of law that we review de novo. *In re Adoption of S.L.*, 210 N.E.3d 1280, 1282 (Ind. 2023).

[5] Indiana Appellate Rule 5 states that this Court has jurisdiction in all appeals from final judgments and "over appeals of interlocutory orders under Rule 14[.]" In her notice of appeal, Mary purports to appeal from a final judgment as defined by Indiana Appellate Rule 2(H). That rule states,

> A judgment is a final judgment if:
>
> (1) it disposes of all claims as to all parties;
>
> (2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties;
>
> (3) it is deemed final under Trial Rule 60(C);
>
> (4) it is a ruling on either a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 or Criminal Rule 16; or
>
> (5) it is otherwise deemed final by law.

*Id*. The Estate correctly observes that not one of these criteria has been met.

[6] Indiana Appellate Rule 14(B) governs discretionary interlocutory appeals, which may be taken if a trial court grants a party's request to certify its

interlocutory order "and the Court of Appeals accepts jurisdiction over the appeal." Obviously, none of that happened here.

[7] Finally, Indiana Appellate Rule 14(A) provides that an appeal may be taken as a matter of right from certain interlocutory orders, such as an order "[f]or the payment of money[.]" The Estate argues that the trial court's order is not an order for the payment of money (or any of the other orders listed in Rule 14(A)) and therefore Mary's appeal should be dismissed for lack of jurisdiction.

[8] We disagree. The trial court's interlocutory order directs the Estate to pay $119,312.80 to Agnes, based on the court's determination that those funds must be considered part of a specific bequest under the will. This order obviously works to the detriment of Mary, who would stand to inherit approximately $11,185.58 if those funds are considered part of the residuary estate. We have no trouble concluding that the order is one for the payment of money from which Mary may appeal as a matter of right pursuant to Appellate Rule 14(A)(1). *See State v. Hogan*, 582 N.E.2d 824, 825 (Ind. 1991) (noting that "matters which are appealable as of right under [predecessor to Appellate Rule 14(A)(1)] involve trial court orders which carry financial and legal consequences akin to those more typically found in final judgments[,]" including "payment of money"); *Castor v. Castor*, 333 N.E.2d 124, 126 (Ind. Ct. App. 1975) (holding that wife in dissolution action could appeal interlocutory order directing husband to pay allegedly insufficient temporary spousal

maintenance, based on predecessor to Appellate Rule 14(A)(1)). Consequently, we deny the Estate's request to dismiss this appeal.[1]

## Section 2 – The trial court did not correctly interpret the will.

[9] We now address the merits of Mary's appeal. The interpretation of a will is a question of law, and thus we owe no deference to the trial court's legal conclusions. *Pereira v. Pereira*, 983 N.E.2d 605, 609 (Ind. Ct. App. 2013), *trans. denied*. "The testator's intent is controlling, and is not to be frustrated so long as it is not contrary to law." *Id*. "The paramount objective in construing a will is to

---

[1] The Estate cites a 2022 memorandum decision for the proposition that Appellate Rule 14(A)(1) requires that an order for the payment of money "direct 'one of the parties to pay a specific sum to another party or to the court by a date certain.'" Appellee's Br. at 10 (quoting *West v. Gartley*, No. 21A-EU-1687, 2022 WL 729105, at *2 (Ind. Ct. App. Mar. 11, 2022)). By implication, Appellate Rule 65(D) provides that a memorandum decision issued before January 1, 2023, "must not be cited to any court except to establish *res judicata*, collateral estoppel, or law of the case." "However, a memorandum decision issued on or after January 1, 2023, may be cited for persuasive value to any court by any litigant." *Id*. In any event, we note that in *West*, the quoted excerpt is followed by a citation to *DuSablon v. Jackson County Bank*, 132 N.E.3d 69 (Ind. Ct. App. 2019), *trans. denied* (2020). In *DuSablon*, another panel of this Court agreed with the appellant that an interlocutory order for attorney fees as a discovery sanction, "which ordered him to pay a specific sum of money by a date certain and was recorded in the trial court's record of judgments and orders, [was] appealable as of right as an order for the payment of money under Appellate Rule 14(A)(1)." *Id*. at 76. Appellate Rule 14(A)(1) contains no "date certain" requirement, and *DuSablon* does not explicitly read one into the rule. Moreover, neither Indiana Trial Rule 58 nor Indiana Small Claims Rule 11, which govern judgments, contains a "date certain" requirement. In dicta, the *West* panel found it "unlikely" that the order at issue would have been appealable as of right under Rule 14(A)(1) because it did not include a date certain for payment. 2022 WL 729105, at *2. We respectfully disagree with this assessment. *See Ind. Newspapers v. Miller*, 980 N.E.2d 852, 860 (Ind. Ct. App. 2012) ("When we interpret our rules of procedure, we follow the same rules of construction as when we interpret statutes."), *trans. vacated*; *Carter-McMahon v. McMahon*, 815 N.E.2d 170, 175 (Ind. Ct. App. 2004) ("[I]n construing a rule, it is just as important to recognize what it does not say as it is to recognize what it does say."). For the same reason, we also respectfully disagree with *Gallo v. Allstate Property & Casualty Insurance Co.*, another memorandum decision, in which the panel held that because an interlocutory order did not require payment of a discovery "sanction by a date certain, it [was] not appealable as of right pursuant to Appellate Rule 14(A)(1)." No. 19A-CT-2308, 2020 WL 500222, at *2 (Ind. Ct. App. Jan. 31, 2020), *trans. denied*.

determine and give effect to the testator's true intent as expressed in the will." *Id.* (quoting *Myers v. Ellerbusch*, 746 N.E.2d 408, 409 (Ind. Ct. App. 2001)).

[10] To determine intent, we look to the four corners of the will and the language used in the instrument. *Id.* We "should strive to give effect to each provision, clause, term, or word if possible." *Id.* "We assume the testator used the words in a will in their common and ordinary sense and meaning." *In re Estate of Owen*, 855 N.E.2d 603, 609 (Ind. Ct. App. 2006). "If the language in a will is unambiguous and clearly expresses the testator's intent, the express language of the will must govern." *In re Estate of Cashen*, 715 N.E.2d 922, 924 (Ind. Ct. App. 1999).[2]

[11] It is clear to us that the assets listed in paragraph 10b of the trial court's order are not "my cash in Banks," in the common and ordinary sense and meaning of that phrase. The refunds from the agricultural suppliers and farm lessors were obtained only after (and only because of) William's death and thus were not "[his] cash in Banks" at the time of his death, and the uncashed grain checks were merely unrealized promises to pay.[3] Accordingly, we reverse and remand

---

[2] "[W]hile previous decisions may help guide our interpretation of language, the meaning of language in any will is determined by the facts particular to that will." *Schaefer v. Estate of Schaefer*, 167 N.E.3d 1173, 1178 (Ind. Ct. App. 2021), *aff'd on reh'g in mem. decision*, *trans. denied*. Given the unique language in William's will, we do not find the cases cited by the parties helpful here.

[3] Mary points out that "there was no evidence presented regarding what William had intended to do with the checks. He may have planned to deposit the checks into the First Financial Bank checking account, but he may have also planned to cash the checks and store them in the jars found around his house, or to use the proceeds to buy items for his home or farms." Appellant's Br. at 13 (transcript citation omitted).

for those assets to be distributed as part of William's residuary estate according to the laws of intestate succession.

[12] Reversed and remanded.

Bradford, J., and Tavitas, J., concur.

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Ciyou & Associates, P.C.
Indianapolis, Indiana

Anne Medlin Lowe
Fugate Gangstad Lowe, LLC
Carmel, Indiana

ATTORNEY FOR APPELLEE

Jeffrey A. Lawson
Fort Mitchell, Kentucky